In the matter of the estate of ALBERT ALLEN, deceased.

[Submitted February term, 1932. Decided May 16th, 1932.]

*Mr. Henry W. Lewis (Mr. Lewis Starr,* of counsel), for Kathryn Ailes, proponent of the will.

*Messrs. Endicott & Endicott,* for Lillian Seltzer Reulens, caveatrix.

*Mr. W. Elmer Brown, Jr.,* for Thomas Allen et al., next of kin.

PER CURIAM.

The case is before us on two appeals, one by Lillian Seltzer Reulens, caveatrix, from the decree in the prerogative court granting probate to the will and the other by Kathryn Ailes, proponent, from so much of the decree in the prerogative

court as directs payment of costs and counsel fees from the decedent's estate. The controversy is one of fact, and as the testimony fills two large volumes, it is impracticable to do more than present the salient features thereof.

Albert Allen, the testator, a resident of the city of Pleasantville, in the county of Atlantic, died suddenly on October 22d, 1928, at a hospital in Winchester, Virginia, while on an automobile trip with Frank P. Ailes and Kathryn Ailes (wife of Frank) and two others. At the time of his death the decedent was seventy-five years of age. He left an estate of a value then in excess of $150,000 but which has shrunk to a fraction of that figure. The decedent's next of kin were his brother, Thomas Allen, eighty-three years of age; a sister, Sarah A. Reger, who was an elderly woman, and nine nieces and nephews. Albert Allen had had no children. He had been married twice. His second wife had two children when he married her, and these are the present appellant Lillian Seltzer Reulens and her sister, Anna Shumway. The two last named women are, therefore, stepdaughters but are not next of kin to the decedent. After Mr. Allen's death Kathryn Ailes offered the instrument that was admitted to probate, as the decedents' last will and testament, by the surrogate of Atlantic county and, on successive appeals, by the decree of the Atlantic county orphans court and by the decree of the prerogative court. This paper was dated September 7th, 1928, was drawn by Augustus F. Daix, a Philadelphia lawyer, who had long acted professionally for Mr. Allen and members of his family. It was witnessed by a clerk in the employ of Mr. Daix and by Dr. John A. Boger, a practicing physician of Philadelphia who had, almost throughout his lifetime, known Albert Allen and who had been his personal physician. The execution of the instrument seems to be faultless. Mr. Allens' second wife had died September 7th, 1919. For some weeks after that Mr. Allen resided with Mrs. Reulens and on October 25th, 1919, executed a will naming Mrs. Reulens as principal beneficiary. At about the last mentioned time Mrs. Shumway introduced Mr. Allen to Kathryn Ailes, and, partly

on Mrs. Shumway's suggestion, an arrangement was made whereby the Ailes family came to live with Mr. Allen at his home and furnished the table, in return for which no rent was charged. Except for a short intermission Mrs. Ailes and her husband and, until they left home, the Ailes children and Mr. Allen all lived together much as though members of the same family. As Mr. Allen became older the attentions given to him by Mrs. Ailes became more intimate; Mrs. Shumway and Mrs. Reulens say, without convincing evidence, improperly so. But, omitting the last mentioned suggestion of improper relations, the proof is that Mrs. Ailes did for Mr. Allen practically all of the things that ordinarily a daughter would do for an aging father—she looked after his comfort, nursed him in his illnesses, took him on his errands, helped him with his accounts, and accompanied him along with her husband and others on pleasure trips.

It is said on behalf of Mrs. Reulens on the appeal from the probate that the instrument of September 7th, 1928, should not be admitted to probate because it was the production of an undue influence exerted upon the mind of the testator by Mrs. Ailes, the sole beneficiary. In support of this contention it is claimed that at the execution of the will the testator's mental and physical powers had been so reduced that he was unable to resist the domination and influence of Mrs. Ailes; that the latter occupied a confidential relation to the decedent; that at the time of the execution of the instrument and for a long time prior thereto Mrs. Ailes had exercised a domination over the will of the decedent by wiles, by causing him to fear and by excluding his family, relatives and friends from their normal contact with him and, finally, that the burden of rebutting the presumption of undue influence raised by the facts in the case is upon the proponent.

There is no direct proof of undue influence. There is evidence given by Mrs. Reulens and Mrs. Shumway regarding statements made to them by the decedent in his lifetime and by Mrs. Ailes, which, if true, would tend to indicate not only the purpose on Mrs. Ailes' part to dominate Mr. Allen, but

the actual surrender by the latter to such domination; but this testimony obviously was not believed either in the orphans court or in the prerogative court, and we are constrained to say that in our opinion the evidence contradictory thereof is the more weighty. The remaining evidence relied upon by the caveators to maintain their point in this respect lacks force and substance and for that most part is suggestive of humor on the part of the testator.

The virility of Mr. Allen's mental and physical powers, allowing for his years, up until the time of his death is attested to by a large number of witnesses from all walks in life—bankers, brokers, merchants, public office holders, mechanics, even the trained nurse who administered to Mr. Allen in the short and acute illness from which he died. The last named witness, Miss Catherine Booth, produced by the caveators, testified that she first saw Mr. Allen the day before he died, that he was then very ill and was apparently suffering from acute indigestion, that he was rather weak due to the nausea that he had had before entering the hospital, but that his mental condition, so far as she could tell, was normal, that Allen was conscious until within five or ten minutes of his death and that up to that time he was perfectly rational and able to converse with the witness and with others in a rational way. George R. Manning of the Pleasantville Trust Company testifies in detail to his relations with, and knowledge of, the decedent from 1922 until the week before the death; that he had seen Mr. Allen five or six times in the month of October, 1928, and fifteen or twenty times in the month of September, 1928, at divers places—at the bank, at home and on the street—and that the witness had not observed any impairment of Allen's mental faculties and considered that his physical condition was good for a man of his age; and in addition the witness testifies to a wealth of detail regarding Mr. Allen's business transactions. One of the incidents testified to by this witness had relation to an inquiry on August 9th, 1928, by the decedent whether a "will written on just a letter sheet would

stand in New Jersey." The witness testifies: "I told him under contest, no. He said, 'what do you advise me to do to make a good will?' I said, 'go to a good lawyer. * * *' He said, 'I want to see Kate and Frank better taken care of.' I says, 'in that case, if you expect trouble, you better see a good lawyer.' He said, 'I will see my lawyer in Philadelphia, Senator Daix.' He said, 'he is the best lawyer in Philadelphia.' * * *. He said they [viz., Mr. and Mrs. Ailes] had been very good to him."

There is no satisfying evidence that Mrs. Ailes influenced or attempted to influence the testator to exclude his family, relatives or friends from their normal contacts with him, or that these persons were in fact excluded. There appears to have been a dearth of effort on the part of the members of the family to interest themselves in Mr. Allen's welfare during his lifetime. His brother saw him but seldom. His sister called upon him only once after his second wife's death and that was while he was at the hospital in Philadelphia in 1923 for an operation. With few exceptions the nieces and nephews seems not to have concerned themselves about their uncle. The feeling between Mr. Allen and Mrs. Shumway was not cordial. It is in evidence that Mr. Allen had said shortly before his death that Mrs. Reulens, who lived rent free in a house belonging to him, had quarreled with him because he had refused to install some improvement that she wanted and had kicked him in the groin.

We recognize that Mrs. Ailes did occupy a confidential relation to the decedent, and we note the contention that the burden of rebutting the presumption of undue influence raised by the facts in the case is therefore cast upon her; but we find it unnecessary to determine where the burden lies as a matter of law for the reason that, in our opinion, the proponent has in fact successfully carried the burden of rebutting the presumption of undue influence.

The decree below, in so far as it allows probate to the will and directs letters testamentary to issue, will be affirmed.

On allowances: In the orphans court allowance was made

558

to the proctors for the proponent in the sums of $10,000 counsel fee and $826.05 costs and expenses; to the proctors for Mrs. Reulens in the sums of $10,000 counsel fee and $1,105.67 costs and expenses; and to the proctor for the next of kin in the sums of $3,000 counsel fee and $473.50 costs and expenses. The prerogative court reduced these allowances for counsel fees, in the order named, to $7,500, $7,500 and $2,500, retaining the allowances for costs and expenses. Counsel for the proponent assert, and the remaining counsel do not deny, that the gross personal estate of the testator, before deduction for debts, federal estate tax and New Jersey transfer inheritance tax, costs of administration and other charges, is at this time approximately $58,000. We shall permit the allowances for costs and expenses to remain as stated in the decrees below but shall reduce the counsel fees to the following sums: to the proctors for the proponent $5,000, to the proctors for Mrs. Reulens $3,500, to counsel for the next of kin $1,500.

The decree below will be affirmed with such modification as is necessary in order to correct the allowances.

No. 37—

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, KERNEY, JJ. 14.

*For reversal*—None.

No. 94—

*For modification*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, KERNEY, JJ. 14.